UNITED STATES DISTRICT COURT          FOR ONLINE PUBLICATION ONLY
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- X
BHAGWAHDATT PERSAUD and SHALINE      :
PERSAUD,                             :
                                     :
                  Plaintiffs,        :
                                     :         MEMORANDUM
                                     :         AND ORDER
        - against -                  :
                                     :         06 CV 3119 (JG) (JMA)
                                     :
URS MIDWEST, INC., d/b/a URS AUTO    :
and RENARD MERCER,                   :
                                     :
                  Defendants.        :
------------------------------------------------------------- X

A P P E A R A N C E S:

    TAUB & MARDER, Esqs.
        450 Seventh Ave., 37th Flr
        New York, NY 10123
    By:   C. Michelle Clemmens
        Attorneys for Plaintiff

    SCHNADER HARRISON SEGAL & LEWIS, LLP
        140 Broadway, Suite 3100
        New York, New York 10005-1101
    By:   Saul Wilensky
        Attorneys for Defendants

JOHN GLEESON, United States District Judge:

        On December 1, 2004, on Third Avenue near 45th Street in Brooklyn, New York, defendant Renard Mercer, a citizen of New Jersey, drove a tractor trailer into an armored car occupied by plaintiff Bhagwahdatt Persaud, a citizen of New York. On May 19, 2006, Persaud sued Mercer and Mercer's employer (owner of the rig he was driving), URS Midwest Inc., d/b/a URS Midwest ("URS") (a Delaware corporation with its principal place of business in

Michigan), alleging that Mercer's negligence caused Persaud to sustain a serious physical injury.[1]  Defendants filed a notice of removal on June 23, 2006.

The defendants now move for summary judgment pursuant to Federal Rule of Civil Procedure 56 on the ground that Persaud did not suffer a "serious injury" within the meaning of N.Y. Insurance Law § 5102(d).  For the reasons set forth below, the motion is granted in part and denied in part.  It is granted with respect to Persaud's claim of serious injury due to (a) permanent loss or use of a body organ, member, function or system; (b) permanent consequential limitation of use of a body organ or member; and (c) inability to perform substantially all of his usual and customary daily activities for 90 of the 180 days following the accident.  It is denied with respect to Persaud's claim of serious injury based on a significant limitation of the use of his cervical and lumbar spine, provided that Persaud file, in admissible form and within three weeks of the date of this opinion, the medical information on which his opposition to the motion is based.

## FACTS

The following facts are either undisputed or are set forth in the light most favorable to Persaud.  On December 1, 2004, Mercer double-parked his tractor trailer in the right-most travel lane on Third Avenue near the 45th Street.  Defendants' Rule 56.1 Statement ¶ 1. He left the car to purchase lottery tickets at a nearby store.  *Id.* at ¶ 6.  When he returned, Mercer noticed an armored car double-parked directly in front of his.  *Id.* at ¶ 7.  In backing out of the space, Mercer made a wide left turn, then a right turn, but as he was entering the travel lane, a car came up on his left side, prompting Mercer to turn sharply to the right to avoid colliding with the car on his left.  *Id.*  In doing so, Mercer hit the left rear end of the armored car

---

[1] Persaud stated at his deposition that he withdraws the second cause of action in his complaint, which sought damages for loss of consortium.  *See* Ex. F at 82-83.

2

occupied by Persaud, causing what Persaud felt as a "heavy impact." Plaintiff's Rule 56.1 Counter Statement ¶ 9; Persaud Dep. at 47.

After the collision, Persaud, an employee of Dunbar Armored Car Service, continued to work, making more than ten deliveries that day. Defendants' Rule 56.1 Statement ¶ 10. Upon returning to headquarters, he told his boss that he was in pain because of the accident, but he did not go to the hospital. Defendants' Rule 56.1 Statement ¶ 11; Plaintiff's Rule 56.1 Counter Statement ¶10. Persaud took a week off from work, and returned only to cease working again two days later because of his injuries. Defendants' Rule 56.1 Statement ¶ 12; Plaintiff's Rule 56.1 Counter Statement ¶11. Persaud was then terminated from his employment effective January 14, 2005 for reasons unrelated to the accident. Defendants' Rule 56.1 Statement ¶ 13.

Persaud applied for and received unemployment benefits, indicating on the application that he was able and fit to work. Defendants' Rule 56.1 Statement ¶ 17; Plaintiff's Rule 56.1 Counter Statement ¶17; Persaud Dep. at 75-76.[2] In the final week of the period in which he was receiving unemployment compensation (in July 2005), Persaud took a trip to Guyana. Defendants' Rule 56.1 Statement ¶ 11; Plaintiff's Rule 56.1 Counter Statement ¶11. In August 2005, he resumed working for a different security company, Defender Security. In September 2005, Persaud quit that job and joined Rapid Armored Car, working five days a week. Defendants' Rule 56.1 Statement ¶ 18.

Three months before the accident, Persaud had complained of numbness and tingling in his hands and wrists, which was later diagnosed as carpal tunnel syndrome. Persaud does not allege that his carpal tunnel syndrome is in any way causally related to the December 1,

---

[2] Persaud maintains that his allegation here -- that he was disabled from employment from December 1, 2004 to July of 2005 -- is not contradicted by that application because he was only disabled from seeking employment in his area of work. Plaintiff's Rule 56.1 Counter Statement ¶ 17.

2004 accident. Defendants' Rule 56.1 Statement ¶ 16; Plaintiff's Rule 56.1 Counter Statement ¶ 16.

In the week following the accident, Persaud sought medical treatment for pain in his lower back, shoulder and neck from Dr. Michael Alleyne, who diagnosed Persaud with focal disc herniations at C4-5 and C5-6 and with posterior disc herniations at L1-2 and L5-S1. Plaintiff's Rule 56.1 Counter Statement ¶ 12. Allyne referred Persaud to a neurologist, Dr. Ahmed Elfiky, who examined Persaud first on January 21, 2005 and then again on April 1, 2005. Pl. Ex. B, C. After recommending physical therapy and MRI scans, Elfiky diagnosed Persaud with cervical and lumbar disc herniations, a right shoulder sprain, and a right wrist sprain. *Id.* Persaud went to physical therapy, received about four MRIs, and continued to receive treatment on a regular basis from Dr. Sujit Bhattacharya (Alleyne's successor) until February 20, 2006. Plaintiff's Rule 56.1 Counter Statement ¶ 12.

Persaud testified in his deposition that he experiences pain in daily living, and that even though he hasn't been placed on "light duty" in the security company, he cannot "lift constantly," nor is he able to bend fully at the knee, stand for long periods of time, or lift heavy items. Persaud Dep. 72-73.

On September 24, 2007, Persaud was examined by Dr. Robert Goldberg, D.O., who was retained by defendants' insurance company. Plaintiff's Rule 56.1 Counter Statement ¶ 19. Goldberg found that there was no objective evidence that Persaud sustained any soft tissue, nerve, nerve root or bony injury in the motor vehicle accident of December 1, 2004 and that "there is nothing to support the diagnosis of cervical or lumbar disc herniations." Def. Ex. K. Additionally, Goldberg opined that Persaud's complaints are inconsistent with videotapes of him bending and squatting easily. *Id.*

Another physician retained by the defendants' insurance company, Dr. Sanford Antin, examined the MRI scans from after the collision and concluded that there were chronic degenerative changes in the lumbosacral and cervical spine, but no root impingement with either area. Def. Ex. L. He suggests that the disc herniation was related to a degenerative disease and not caused by the accident. *Id.* Persaud dismisses this opinion because he had never had any complaints of neck, back or shoulder discomfort before the accident. Plaintiff's Rule 56.1 Counter Statement ¶ 22.

Finally, Persaud was examined in February 2005 by Dr. Stephen Zolan, an orthopedist retained by the no-fault carrier. Zolan found that Persaud had sustained "cervical and lumbar sprains, clinically resolved, no clinical evidence of disk herniations"; that he did not require any further orthopedic or physiotherapeutic treatment; and that he was able to perform all activities of work and daily living without restriction. Def. Ex. N.

On August 25, 2005, the New York Workers' Compensation Board found that Persaud sustained a work-related injury to his neck and back. Pl. Ex. D. As part of the ongoing claim, Dr. Richard Seldes issued a memorandum to the Board dated September 24, 2007, finding that Persaud had experienced a loss of use of 5% of his right shoulder as a result of the accident. Pl. Ex. E. Persaud also submitted a report from Dr. Bhattacharya dated November 16, 2007 stating that the disc herniations were "a direct result of the injury." Pl. Ex. A. Dr. Bhattacharya analyzed tests performed from December 6, 2004 to February 20, 2006, and found that over time, Persaud's range of motion was significantly limited for both the cervical spine and the lumbar spine. *Id.*

DISCUSSION

A.  *Summary Judgment Standard*

Under Rule 56 of the Federal Rules of Civil Procedure, the moving party is entitled to summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must demonstrate that no genuine issue exists as to any material fact. *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223 (2d Cir. 1994). For summary judgment purposes, a fact is "material" when its resolution "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* Accordingly, in determining whether an issue is genuine, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotation marks and citation omitted).

Once the moving party has met its burden, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 587 (quoting Fed.R.Civ.P. 56(e)) (emphasis omitted). Critically, the moving party may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case. When no rational jury could find in favor of the nonmoving party because the evidence to support its case is so slight, there is no genuine issue of material fact and a grant of summary judgment is proper. *Gallo v. Prudential Residential Servs.*, *Ltd. P'ship*, 22 F.3d 1219, 1223-24 (2d Cir. 1994) (citations omitted). The nonmoving party cannot survive summary judgment by

casting mere "metaphysical doubt" upon the evidence produced by the moving party. *Matsushita*, 475 U.S. at 586.

B.   *The "Serious Injury" Requirement*

Under New York law, a claimant cannot bring suit for a personal injury arising out of an automobile accident "except in the case of a serious injury." N.Y. Ins. Law § 5104(a). To qualify as a "serious injury," the claimed injury must involve one of the following: (1) death; (2) dismemberment; (3) significant disfigurement; (4) a fracture; (5) loss of a fetus; (6) permanent loss or use of a body organ, member, function or system; (7) permanent consequential limitation of use of a body organ or member; (8) significant limitation of use of a body function or system; or (9) a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than 90 days during the 180 days immediately following the occurrence of the injury or impairment. *See* N.Y. Ins. Law § 5102(d). In his complaint and in his papers in opposition to the motion, Persaud contended that his injuries were "serious" within the meaning of categories (6) through (9). At oral argument, he abandoned any claim under category (6) or (7).

The no-fault law's threshold requirement of "serious injury" was intended "to weed out frivolous claims and limit recovery to significant injuries." *Dufel v. Green*, 84 N.Y.2d 795, 798 (1995). The New York Court of Appeals has accordingly "required objective proof of a plaintiff's injury in order to satisfy the statutory serious injury threshold; subjective complaints alone are not sufficient." *Toure v. O'Neal*, 98 N.Y.2d 345, 350 (2002) (citations omitted*); see also Licari v. Elliot*, 57 N.Y.2d 230, 236 (1982) (the purpose of the no-fault law is to reduce the

number of automobile personal injury accident cases litigated in the courts, and thereby help contain the no-fault insurance premium.).

In the summary judgment setting, New York law places on the defendant the initial burden of establishing a prima facie case that a plaintiff has not sustained any "serious injury." *See Gaddy v. Eyler*, 79 N.Y.2d 955, 956-57 (1992). In support of an argument that there is no such serious injury, a defendant may rely on the unsworn reports by plaintiff's physicians, but evidence from its own physicians must be provided in the form of sworn affidavits or affirmations. *See Waldman v. Atlantic-Heydt*, No. 04 CV 2154(SJ), 2006 WL 2010783, at * 3 (E.D.N.Y. July 14, 2006); *McGovern v. Walls*, 607 N.Y.S.2d 964 (2d Dep't 1994); *Looney v. Epervary*, 599 N.Y.S.2d 989, 989-90 (2d Dep't 1993); *Pagano v. Kingsbury*, 585 N.Y.S.2d 692 (2d Dep't 1992); *Morrone v. McJunkin*, No. 98 Civ. 2163, 1998 U.S. Dist. LEXIS 19506, at *5-6 (S.D.N.Y. 1998). "A reference to ... unsworn or unaffirmed reports in [a defendant's] moving papers is sufficient to permit the plaintiff to rely upon and submit these reports in opposition to the motion." *Kearse v. N.Y. City Transit Auth.*, 789 N.Y.S.2d 281, 283 n.4 (2d Dep't 2005) (*citing Ayzen v. Melendez*, 749 N.Y.S.2d 445 (2d Dep't 2002)).

If the defendant satisfies this burden, the burden of production shifts to the plaintiff, who must come forward with sufficient evidence to permit a jury to conclude that the plaintiff sustained a serious injury within the meaning of the law. *Gaddy*, 79 N.Y.2d at 957. As mentioned, subjective complaints alone are insufficient to meet that burden. Like the defendant, the plaintiff is obligated to oppose the motion with "competent medical evidence based upon objective medical findings and diagnostic tests [that] support her claims." *Fountain v. Sullivan*, 690 N.Y.S.2d 341 (3d Dep't 1999).

C.  *The Defendants' Prima Facie Case*

The defendants contend that Persaud failed to meet the requirements of a "serious injury" under § 5012(d) because he cannot show (a) permanent loss or permanent consequential limitation of the use of a body organ; (b) significant limitation of use of a body function or system; or (c) a non-permanent medically determined injury that prevented him from performing substantially all of his usual material daily activities for at least 90 of the 180 days following the car accident.

In support of their motion, defendants have submitted reports from Dr. Antin, Dr. Goldberg and Dr. Zolan.  Based on an examination of Persaud on September 24, 2007 and a review of the diagnoses of Persaud's treating physician (Dr. Alleyne), Goldberg concluded that "[t]here is no objective evidence that Mr. Persaud sustained any soft tissue, nerve, nerve root or bony injury in the motor vehicle accident of 12/2004."  Def. Ex. K.  Persaud contests the reliability of this report because Goldberg's direct examination of Persaud's shoulder revealed that the flexion and abduction angles were not normal, so a conclusion that there is "no objective evidence" of injury is unwarranted.  However, Goldberg based his conclusion on an extensive examination of Persaud, and his conclusion hardly failed to address plaintiff's MRI and other objective tests.  *Id.*  Just because Goldberg came to a different conclusion than those of Persaud's doctors does not render his opinion invalid as evidence to satisfy the defendants' burden.  *See, e.g.*, *Kearse*, 789 N.Y.S.2d at 285 ("A defendant who submits admissible proof that the plaintiff has a full range of motion, and that she or he suffers from no disabilities causally related to the motor vehicle accident, has established a prima facie case that the plaintiff did not sustain a serious injury within the meaning of Insurance Law § 5102(d), despite the existence of an MRI which shows herniated or bulging discs).

9

Defendants also submit Dr. Antin's report dated October 1, 2007, in which he diagnosed Persaud as having "prior degenerative disc changes that have no correlation with his alleged accident on 12/1/04." Def Ex. L. Dr. Antin further noted that "the absence of any neural structure involvement on imaging studies of the claimant's spine precludes him from having any neurological deficit or loss." *Id.* Finally, defendants rely on Dr. Zolan's sworn medical report based on a February 17, 2005 examination of Persaud. Dr. Zolan affirmed that Persaud "presents no orthopedic disability. He is able to perform all activities of work and daily living without restriction." Def. Ex. N.

Taken together, the content of these reports is sufficient to shift the burden to Persaud. However, the Antin and Goldberg reports were initially not presented in an admissible form, for notarized but unsworn reports[3] are not competent as evidence as to whether Persaud suffers from "serious injury." New York law provides that "[w]hen a defendant moves for summary judgment dismissing the complaint based on the plaintiff's failure to establish 'serious injury' and relies solely on findings of the defendant's own medical witnesses, those findings must be in admissible form, i.e., affidavits or affirmations, and not unsworn reports." *Pagano v. Kingsbury*, 587 N.Y.S.2d 692, 692 (2d Dep't 1992). In their reply papers, however, defendants have submitted a supplemental affirmation by Goldberg, in which he reiterates his conclusion that there is no objective evidence supporting Persaud's contention that he sustained a significant injury because of the accident.

---

[3] There is no jurat, or "sworn to me before" language, on the notary stamp affixed to the reports.

Zolan's report and Goldberg's supplemental affirmation are sufficient to shift the burden to the plaintiffs.[4] Zolan had conducted a thorough examination of Persaud soon after the accident, finding normal unrestricted movement, normal lumbar lordosis and a normal cervical lordosis. And while Zolan did note that the injuries were causally related to the accident, the cervical and lumbar sprains had since resolved, and according to him, there was no clinical evidence of disk herniations as reported on the MRIs. Def. Ex. N. Similarly, Goldberg performed his own tests revealing that Persaud did not sustain any significant injury due to the accident.

D.         *Plaintiff's Prima Facie Case*

Since the defendants have met the burden of presenting a prima facie case that Persaud did not suffer a serious injury, the burden shifts to Persaud to establish a triable issue of fact. To do so, Persaud must submit competent and admissible medical evidence based on objective medical findings and diagnostic tests to support his claim. His experts must provide a basis for their conclusions by quantifying any loss or limitation, or otherwise demonstrating that it is meaningful. *Fountain*, 690 N.Y.S.2d at 341.

Persaud argues that "[p]laintiff has submitted the sworn report of his treating physicians stating that he has experienced limitation in his range of motion of the cervical and lumbar spine, that said limitation is related to cervical and lumbar disc herniations, which are confirmed by MRI reports, and that said injuries were traumatically induced and are causally related to the motor vehicle accident of December 1, 2004." Plaintiff's Memorandum of Law at 8. He argues that he has suffered a significant limitation of the use of the cervical and lumbar

---

[4] Inasmuch as I conclude that the defendants have satisfied the requirements for bringing a prima facie case, I need not address the claim advanced at oral argument that a defendant in a diversity case is not bound by the procedures applicable in state court to these motor vehicle cases.

spines and that he has suffered non-permanent injury preventing him from performing substantially all of his usual material daily activities for at least 90 of the 180 days following the collision.

In support of his motion, Persaud relies on the reports of Dr. Sujit Bhattacharya, Dr. Ahmed Elfiky, Dr. Richard Seldes as well as on the results of the MRI.[5]

1. *Significant Limitation of Use of a Body Function or System*

"[M]inor, mild or slight limitation of use" is "insignificant" and does not constitute a "significant limitation of use of a body function or system" within the meaning of N.Y. Ins. Law § 5102(d). *Licari*, 57 N.Y.2d at 236. Rather, a "significant limitation" requires proof of "more than a minor limitation of use." *Id.* To establish such a showing, a medical affidavit specifying "the degree of restriction of movement suffered" and "the objective tests performed to determine such restriction of movement" is generally satisfactory. *Merisca v. Alford*, 663 N.Y.S.2d 853, 854 (2d Dep't 1997); *see also Parker v. Defontaine-Stratton*, 647 N.Y.S.2d 189, 190 (1st Dep't 1996) ("[A] medical affidavit which demonstrates that the plaintiff's limitations have been objectively measured or quantified is sufficient.").

Persaud presents MRI reports as radiological evidence that he sustained focal disc herniations at C4-5 and C5-6 and posterior disc herniations at L1-2 and L5-S1. While "the mere existence of a . . . herniated disc does not establish a serious injury in the absence of objective evidence of a related disability or restriction . . .", *Rudas v. Petschauer*, 781 N.Y.S.2d 120, 121 (2d Dep't 2004), Bhattacharya's sworn[6] November 16, 2007 report provides objective evidence

---

[5] The MRI reports, even though unsworn, are admissible. *See, e.g., Zarate v. McDonald*, 819 N.Y.S.2d 288 (2d Dep't 2006) (unsworn MRI report admissible where the results of the report were referred to in an affirmed medical report of defendant's examining neurologist).

[6] Even though Bhattacharya's report is sworn, his conclusion is based on the unsworn diagnosis of Persaud's first doctor, Alleyne, and therefore his conclusions are inadmissible. *See Mahoney v. Zerillo*, 774

12

of a related disability and restriction. Specifically, it presents test results showing that over time Persaud's range of motion of the cervical and lumbar spine diminished to a significant degree. These results support Bhattacharya's conclusion that the limited range of motion has "caused consequential limitations" as a "direct result of the injury." Pl. Ex. A.

Persaud's reliance on the Workers' Compensation Board decision and supporting medical documentation, however, is unpersuasive. The Board issued a decision dated March 7, 2007 stating that Persaud suffered a work-related injury to his right shoulder. Persaud also presents the unsworn report of Dr. Seldes, who concluded that Persaud lost 5% of the use of his shoulder. This evidence does not establish a "serious injury." *See, e.g. Murphy v. Arrington*, 744 N.Y.S.2d 255, 257 (3d Dep't 2002) (even though plaintiff received workers' compensation award because of a 7.5 % loss of use of his right shoulder, such medical evidence was insufficient to establish serious injury under the "significant limitation" category).

Nevertheless, Persaud has established a genuine issue of material fact with regard to whether the accident caused a significant limitation of his use of his cervical and lumbar spines. The decreased range of motion reports, together with the evidence of disc herniations, warrant that conclusion. *See Stein v. Bentor*, 2005 WL 2244831 (E.D.N.Y.2005) (Ross, J.) at *9-10.

2. *Prevention from Performing Usual and Customary Daily Activities*

In order to raise a genuine issue of material fact as to whether Persaud was prevented "from performing substantially all of the material acts which constitute[d] ... [his]

---

N.Y.S.2d 378, 378 (2d Dep't 2004) (a doctor's affirmation is without probative value when it is based on unsworn reports of other doctors); *see also Waldman v. Atlantic-Heydt*, 04 CV 2154 (SJ), 2006 WL 2010783, at *7 (E.D.N.Y. July 14, 2006). This requirement strikes me as substantially replicating what Rule 56(e)(2) requires of the plaintiff, that "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." At oral argument, plaintiff's counsel was unable to explain why he did not submit a sworn medical report from Alleyne.

13

usual and customary daily activities" for 90 of the 180 days following the accident, N.Y. Ins. Law § 5102(d), Persaud must demonstrate that his usual activities were curtailed "to a great extent rather than some slight curtailment." *Licari*, 57 N.Y.2d at 236. He has failed to do so.

Persaud testified in his deposition that he was incapacitated from his usual and customary activities, citing problems with bending, lifting and standing for long periods of time. Persaud Dep. 72-73. He states that because of the accident he did not go to work for a week, and even after he attempted to work, he lasted only two days. He was terminated soon thereafter for unrelated reasons, but Persaud claims that from his termination in January until the beginning of his new job in August 2005, he was unable to work as a security guard.

Though Persaud presents testimony that he refrained from his usual and customary activities for the necessary time period, in order to survive a motion for summary judgment, he must also provide competent medical testimony that he was unable to do so because of the injury itself. *See, e.g., Jackson v. New York City Trans. Auth.*, 708 N.Y.S.2d 469, 469 (2d Dep't 2000) ("[P]laintiff's self-serving affidavit stating that she was unable to return to work . . ., without a physician's affidavit substantiating the existence of a medically determined injury which caused the alleged limitation of her activities, was insufficient to create a triable issue of fact as to her inability to perform substantially all of her daily activities for not less than 90 of the first 180 days subsequent to the accident."); *see also Below v. Randall*, 658 N.Y.S.2d 767, 768 (3d Dep't 1997) ("Even were we to accept that plaintiff could not engage in certain activities and sports, there has been no showing that these restrictions were medically indicated . . ."). The submitted medical reports are insufficient to meet that burden.

In addition to the reports already discussed, Persaud relies on the Workers' Compensation Board decision on March 6, 2007 stating that he suffered a work-related injury to

his right shoulder. Pl. Ex. D. But the Board's decision, and Seldes' statement that Persaud lost 5% of the use of his shoulder, do not provide adequate support for the claim that Persaud was incapacitated from working for 90 of the 180 days following the accident. Indeed, Seldes did not even indicate whether the limited loss of movement was serious enough to disable Persaud from his usual activities. *Murphy v. Arrington*, 744 N.Y.S.2d 255, 257 (3d Dep't 2002). No triable issue of fact exists on this ground even when the evidence is viewed in the light most favorable to Persaud.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted with respect to Persaud's claim that he suffered serious injury due to (a) permanent loss or use of a body organ, member, function or system; (b) permanent consequential limitation of use of a body organ or member; and (c) inability to perform substantially all of his usual and customary daily activities for 90 of the 180 days following the accident. However, with respect to the plaintiff's claim that he suffered a significant limitation of the use of his cervical and lumbar spines, the motion is denied, provided that Persaud serves and files in admissible form his evidence in opposition to the motion within 3 weeks of the date of this motion. If he is unable to do so, the Court will sua sponte reconsider this decision and grant the motion for summary judgment based on Persaud's failure to comply with Rule 56(e). *Nasrallah v. Helio De*, 1998 WL 152568 (S.D.N.Y.1998), at *5.

So ordered.

John Gleeson, U.S.D.J.

Dated: Brooklyn, New York
December 21, 2007